F. BURKHART MANUFACTURING COMPANY, a Corporation, Appellant, v. RALPH W. COALE, Assessor of the City of St. Louis, and FORREST SMITH, State Auditor.—139 S. W. (2d) 502.

Division Two, May 4, 1940.

*Cobbs, Logan, Roos & Armstrong* and *Borders, Warrick & Hazard* for appellant.

1132

*Roy McKittrick*, Attorney General, and *Russell C. Stone*, Assistant Attorney General, for respondents.

WESTHUES, C.—Appellant, plaintiff below, filed this suit in the Circuit Court in the City of St. Louis, Missouri, against respondents Ralph W. Coale, assessor of said city, and Forrest Smith, State Auditor, for the abatement of an additional assessment made against appellant for State income taxes for the year 1935. Appellant not being satisfied with the judgment of the circuit court duly appealed. Construction of the State revenue laws being involved vested this court with appellate jurisdiction.

The controversy is over the proper interpretation of Section 10115, Revised Statutes 1929 (Mo. Stat. Ann., page 8080). [See Laws 1931, p. 365.] This section provides that all of the income of a domestic corporation derived from business transacted wholly within this State shall be subject to income taxes. As to income derived from transactions partially in this State and partially in another State the section referred to provides as follows:

". . . *Provided,* that where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portions of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states; *Provided, however,* the taxpayer may elect to compute the portion of income from all sources in this state in the following manner; The net income from all sources shall be determined as now or hereafter may be provided, excluding therefrom the figures for the operation of any bridge connecting this state with another state. The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales or in cases where sales do not express the volume of business, the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of tax, and the amount of tax shall be such per centum thereon as may now or hereafter be provided. . . ."

From the agreed statement of facts we learn that appellant is a Missouri corporation. It was domesticated in the States of Arkansas, Pennsylvania and Michigan. In each of these States appellant operated a factory. Each factory operated as a separate business unit with directory control vested in its executive officers who were located in Missouri. Each plant was supervised by a plant manager and had its own quota of salesmen. The orders for each plant were submitted to the plant for acceptance and were filled therefrom. The bills were paid to the plant from which the order was shipped. The plant located in Missouri supplied all of the Missouri customers. During the year 1935, the company's gross sales were $3,899,196.73. Of these sales $640,108.71 were from the Missouri plant to Missouri customers; $772,169.13 were sales from the Missouri plant to customers in foreign States. No Missouri customer was served from any other plant. The trial court held that appellant was liable to pay income taxes based on the sales made to Missouri customers and that the income derived from sales from the Missouri plant to customers in other States should be allocated for income tax as provided for in Section 10115, supra. That part of the judgment is not questioned here by either party. A recent case, Artophone Corporation v. Coale et al., 345 Mo. 344, 133 S. W. (2d) 343, settled that controversy. The trial court in this case, however, held that the sum of $2,586,918.-

89, which sum was derived from sales from appellant's plants in Michigan, Pennsylvania and Arkansas, was from transactions partly within this State and partly without this State, although none of the goods were ever shipped to this State or were ever in this State. It is this portion of the judgment that is here for review. The statement of facts shows that the above sum represents the sale of products which were manufactured, sold, delivered to customers and paid for outside of this State. In other words, the only Missouri connection was, that the company owning the plants was a Missouri corporation and the general business was directed by the executive officers of the company located in Missouri. Does that make the sales from these foreign plants transactions done partly in this State and partly in another State or States? We think not. As said in the Artophone case, supra, taxing statutes are to be strictly construed in favor of the taxpayers. The history of the law now under consideration was there reviewed. It was pointed out that the income tax law of 1917 was discriminatory in favor of foreign corporations; that the Legislature in 1927 amended the act and declared that the purpose of the amendment was the elimination of " 'certain discriminations between residents and non-residents, and between individuals and corporations.' " If the law means what the State in this case claims it does, then it is still discriminatory in favor of foreign corporations licensed to do business in this State and the purpose of the law has failed. Had the Legislature intended that the income derived from all sales by domestic corporations made outside of this State, be included as a basis for income tax, it could have said so in plain terms. This was not done. The phraseology of the act indicates a limitation, and the terms employed are not all-inclusive. Note the wording:

". . . . income results from a transaction partially in this state and partially in another state or states, . . ."

". . . the amount of sales which are transactions partly within this state and partly without this state, . . ."

Take for example, the Michigan plant makes a sale of merchandise to a customer in New York, delivers the goods and collects the money, what part of that transaction was performed in Missouri? The answer is evident. If there can be an event or occurrence described as a transaction partly done within this State and partly done without this State, then the Legislature must have had in mind that there could be a transaction done wholly without this State. If not, the Legislature employed a lot of useless phraseology in the act. It simply could have said that a domestic corporation shall be taxed on all income derived from transactions wholly in Missouri, and all other income derived from any other source shall be allocated.

The State relies strongly upon the Artophone case. It is said that if we adhere to the ruling there made then the State's contention in this case must be sustained. To this we cannot agree.

In the Artophone case the company did not have any of its offices outside of Missouri. All of the sales and business were directed and managed from the Missouri offices. Goods were sometimes shipped direct from a manufacturer in a foreign State to a customer of the Artophone company in a foreign State. The sale, however, had been made by the Missouri office force. The State Auditor contended that all of the income should be treated as having been derived from transactions wholly done in this State. The Artophone company contended that it had a right to allocate that part of its income derived from transactions partly done within this State and partly without this State. This court sustained the contention of the Artophone company. It can be easily seen that the point now under consideration was not before the court in the Artophone case. The facts were entirely different. We did say in that case:

"Appellant contends that the legislative intent as shown by the language of Section 10115, supra, was to avoid any discrimination between domestic and foreign corporations, and: (1) To impose a tax upon the net income of every corporation 'from all sources in this State;' (2) to impose no tax on income of any corporation, domestic or foreign, from sources wholly without this State; and (3) to impose a tax on that portion of the net income of every corporation, domestic or foreign, which represents the portion done in Missouri of transactions of the corporation which are partly done in this State and partly done in another state or states. With this contention we agree."

The Legislature may have thought it a poor policy to impose a heavier tax on domestic corporations than on their foreign competitors doing business in this State, hence the purpose of amending the law so as to eliminate the discriminatory features. It follows that that part of the judgment of the trial court which declared the item of $2,586,918.89, derived from the sales of products from the plants located in Michigan, Pennsylvania and Arkansas, as being subject to income tax in this State, must be reversed. It is so ordered. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.