In re Petition of UNION ELECTRIC COMPANY OF MISSOURI, a Corporation, for abatement of additional income tax assessment for the Year 1936—UNION ELECTRIC COMPANY OF MISSOURI, a Corporation, Appellant, v. RALPH W. COALE, Assessor of the City of St. Louis, and FORREST SMITH, State Auditor.—146 S. W. (2d) 631.

Division One, January 4, 1941.

176

*Igoe, Carroll, Keefe & McAfee* for appellant; *John A. Woodbridge* of counsel.

*Roy McKittrick*, Attorney General, and *Russell C. Stone*, Assistant Attorney General, for respondents.

BRADLEY, C.—This cause was filed January 13, 1940, by the Union Electric Company, and is a proceeding under Sec. 10135, R. S. 1929, Mo. Stat. Ann., 8107, as amended, Laws 1939, p. 846, to abate an additional state income tax assessment of $75,201.56 for the year 1936. The trial court refused to abate and this appeal followed.

178

We shall refer to the Union Electric Company as plaintiff and to the assessor of St. Louis and the State Auditor as defendants. The cause was tried on an agreed statement from which the facts appear as follows:

Plaintiff is a domestic corporation, located in St. Louis, and is en-.gaged as a public utility in supplying its customers with electricity and steam. In due time, plaintiff filed its State income tax. return for the year 1936, which return showed gross income at $22,071,668.20, total deductions at $20,725,308.32, net taxable income at $1,346,359.88, the tax (2%) at $26,927.20, and such tax was untimely paid.

During the year 1936, plaintiff owned stock in eight foreign corporations and a foreign stock company operated by trustees. From these companies plaintiff received, in 1936, dividends in the sum of $3,760,078.50, and so reported in its 1936 return, but did not include such or any part thereof, as taxable income. The dividends "were paid from funds derived from capital employed and operations carried on in" the respective domicil states of each company from which dividends were received, "and none of said companies employed or had any capital in the state of Missouri during the year 1936, or prior thereto, or were engaged in any business or carried on any operations in the state of Missouri during or prior to said year."

Defendants contend that the assessment is authorized by Sections 10115, 10117, Revised Statutes 1929, as amended, Laws 1931, pp. 365, 363, Mo. Stat. Ann., pp. 8080, 8091, when construed together.

Section 10115 (first paragraph) makes taxable: (1) The net income (less exemptions), *from all sources,* of an individual citizen or resident; (2) the net income (less exemptions) *from all sources within this State,* of an individual, not a citizen or resident; (3) (second paragraph) the net income, *from all sources within this State,* of foreign corporations (not exempted); (4) (third paragraph) the net income, *from all source in this State,* of domestic corporations (with certain exceptions); and (5) the net income, *from all sources in this State,* of foreign corporations (with certain exceptions) licensed to or doing business in this State.

Section 7 of our original income tax act (Laws 1917, p. 528) made taxable the net income, *from all sources,* of domestic corporations, while foreign corporations were taxed only on the net income derived *from all sources within this State,* but this discrimination was removed by the Act of 1927, Laws 1927, p. 476, sec. 13106.

The third paragraph of Section 10115 further provides that income "shall include all gains, profits and revenues *from the transactions of the business* of the corporations *in this state,* including gains, profits and revenue from the doing *in this state* of such portions of each transaction of the business of the corporation which transaction is partly done in this state and partly done in another state

or states, and all other income *from sources in this state* as income is *otherwise defined"* (italics ours).

Section 10117 defines income as follows: "Income shall include gains, profits, and earnings derived from salaries, wages or compensation for personal services of whatever kind and in whatever form paid; and from professions, vocations, businesses, trade, commerce, or sales or dealings in property, whether real or personal, *growing out of the ownership* or the use *of* any interest in real or *personal* property; and from interest, rent, *dividends,* securities and gains, profits and earnings from any other transactions of any business carried on for gain or profit; and from any source whatever" (italics ours).

It will be noted that the third paragraph of Section 10115 defines income as gains, profits, revenues from transactions in this State, and includes "all other income from sources in this state as income is *otherwise defined."* Defendants contend that *otherwise defined* has reference to the definitions of income in Section 10117, and that the two sections construed together, as stated, support the assessment here in question. Defendants are correct in the contention that the language, *otherwise defined,* in Section 10115, has reference to the definitions of income in Section 10117. [In re Kansas City Star Company, 346 Mo. 659, 142 S. W. (2d) 1029, l. c. 1036.] The income referred to in Section 10115 as *gains, profits, revenues,* means income from business transactions in this State, while the income referred to in Section 10117 is income otherwise earned. But, in either case, under the facts here, the *source* of the income must be in this State in order to make such income taxable.

There are no cases, in this State, directly in point, but defendants, respondents here, cite Wiseman v. Interstate Public Service Co., 191 Ark. 255, 85 S. W. (2d) 700, and Southeast Power & Lt. Co. v. McCarroll (Ark.), 140 S. W. (2d) 1001.

Wiseman v. Interstate Public Service Company was an action by the Arkansas State Revenue Commissioner to recover, for the year 1931, a State income tax. The defendant was an Arkansas corporation with an office in Little Rock, but its principal business offices were in Madison, Wisconsin, and Bay City, Texas. The company transacted no business in Arkansas except the operation (from Bay City, Texas) of a light and water plant, owned by it, at Foreman, Arkansas. The company owned stock "in a number of utility concerns in Texas," and its total income, in 1931, was $197,975.35. Of this income, $176,000 was from dividends from stock held by it in the Texas companies. These dividends were paid to the defendant company at. Bay City, Texas, and Madison, Wisconsin. The defendant company's net income for 1931, was $169,963.21, of which only $1313.36 was from the Foreman, Arkansas, plant, and the remainder from the dividends. The defendant conceded that it owed an income tax on the net from the Foreman plant, and offered to pay.

Subsection (b) of Section 3 of the Arkansas income tax act (Acts of Arkansas, 1929, p. 573) provided: "Every corporation organized under the laws of this state shall pay annually an income tax with respect to carrying on or doing business equivalent to two (2%) per cent of the *entire net income* (italics ours) of such corporation as defined herein, received by such corporation during the income year; and every foreign corporation doing business within the jurisdiction of this state shall pay annually an income tax equivalent to two (2%) per cent of a proportion of its entire net income to be determined as hereinafter provided in this act."

It will be noted that the Arkansas statute authorized a tax on the *entire* net income of a domestic corporation, regardless of source, and the defendant company challenged the constitutional validity of such part of the statute, but was unsuccessful. The court said (85 S. W. (2d) 1. c. 702): "The courts generally hold that a state has the power to tax a citizen or a domestic corporation on income either within or without the state," citing 61 C. J., sec. 2323, p. 1575; Lawrence v. State Tax Commission of Mississippi, 162 Miss. 338, 137 So. 503, 286 U. S. 276, 52 Sup. Ct. 556, 76 L. Ed. 1102, 87 A. L. R. 374; Franklin v. Carter (C. C. A.), 51 Fed. (2d) 345.

Southeast Power & Light Co. v. McCarroll, *supra,* was also an Arkansas case, and the action there was to restrain the State revenue commissioner from collecting an additional income tax for the years 1936, 1937, and 1938. A demurrer to the complaint was sustained, the cause dismissed, and appeal followed. The Southeast Power & Light Company was a Delaware corporation, and was authorized to operate and did operate in Arkansas, with its principal office at West Memphis, Arkansas, and a branch office in St. Louis. The plaintiff power company owned the majority of the capital stock of the West Memphis Power & Water Company, and of the Southeast Arkansas Telephone & Power Company, both Arkansas corporations. Also, plaintiff power company owned the majority of the stock of a Louisiana corporation, and of an Alabama corporation. From these four companies, the plaintiff received, at its West Memphis office, dividends on the stock owned in the four corporations, and received interest on loans made to these corporations. The tax sought to be enjoined was based on the income from interest and dividends received from the Louisiana and Alabama corporations.

Section 15 of the Arkansas income tax act provided: "If the entire trade or business of a nonresident individual or a foreign corporation is carried on in the jurisdiction of this state, the tax imposed by this act shall be computed upon the entire income of such nonresident, individual or foreign corporation." In holding that the tax was legal, the court said: "Under the conceded facts in the instant case, we think the dividends and interest received by appellant are received by it at its general place of business at West Memphis, Arkansas,

where all of its books and records are kept and where substantially all of its business is transacted. We are clearly of the view, therefore, that appellant is liable for the tax in question." In view of the difference between our statute and the Arkansas statute, the two Arkansas cases are not, as we see it, in point.

But defendants, in the present case, contend that the *shares of stock,* evidenced by *stock certificates,* have a *situs* in this State, and should be considered the source of the dividend income. As supporting this theory, defendants cite State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission et al., 161 Wis. 111, 152 N. W. 848, and First Bank Stock Corporation v. Minnesota, 197 Minn. 544, 267 N. W. 519, 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061. The Manitowoc Gas Company case was an action to abate a State income tax assessment. The gas company, a Wisconsin corporation, had bonds outstanding and secured by deed of trust on real estate in Wisconsin, and some of the bondholders were nonresidents of Wisconsin. In 1911, the gas company paid $11,575 interest to its bondholders, resident and nonresident, and the tax assessment was based on the interest payment and was assessed against the bondholders, resident and nonresident.

The Wisconsin statute provided that an income tax "shall be assessed, levied and collected upon all income, not hereinafter exempted, received by every person residing within the state, and by every nonresident of the state, upon such income as is derived from sources within the state or within its jurisdiction."

The Supreme Court of Wisconsin said: "The nonresidents as bondholders owned no property and conducted no business within its borders, and had no domicile here. True, their debt was secured by property within the state, but the situs of the security for a debt is not necessarily the situs of the evidence of the indebtedness. The Income Tax Law does not seek to reach property or an interest in property as such, but to reach incomes having a situs within the state, or growing out of a privilege exercised or occupation conducted within the state. The law levying an income tax upon nonresidents, 'upon such income as is derived from sources within the state or within its jurisdiction,' must be construed to mean such income as issues directly from property or business located within the state, and not income from loans made therein, though, as here, secured by a trust deed upon property situated within the state. *The situs of the property out of which such income issues is that of the domicile of the creditor"* (italics ours), and it was held "that, as to the nonresident bondholders, the income sought to be taxed was not derived from sources within the state."

First Bank Corporation v. Minnesota, *supra,* involved the question of whether a Delaware corporation doing business in Minnesota could be required, consistently with the due process clause of the 14th

Amendment, Constitution of the United States, to pay a *property* tax laid by Minnesota upon the stock of Montana and North Daktota banks held by the First Bank Stock Corporation in Minnesota. The Minnesota trial court held that such tax could not lawfully be assessed. The Supreme Court of Minnesota held that the First Bank Stock Corporation, a Delaware corporation, had acquired *a commercial domicil* in Minnesota, and that since the Montana and North Dakota bank stock were assets of its business carried on in Minnesota, such bank stock was taxable in Minnesota. The cause reached the Supreme Court of the United States, where the conclusion reached by the Supreme Court of Minnesota was affirmed. The course of reason followed by MR. JUSTICE STONE is concisely stated (81 L. Ed. 1061, headnote 2): ''Stock in state banking corporations of other states owned by a foreign corporation which transacted corporate business and fiscal affairs in a state other than that in which it was organized, keeping there the certificates of stock of a large number of financial institutions in which it owned the controlling interest and there receiving dividends declared by its subsidiaries and declaring and disbursing dividends on its own stock, and in which, through a local subsidiary, it maintains a compensated service for banks which it controls, consisting in the giving of advice as to their accounting practices, recommendations concerning loans, commercial paper, and interest rates, and the purchase and sale of securities, and the planning of advertising campaigns, has a business situs in such state for the purpose of taxation.''

The *situs* of the Montana and North Dakota bank stock or shares for the purpose of *property* tax is something different, as we see it, from the *source* of the income derived from such stock.

Plaintiff's stock certificates in the foreign companies are nothing more than evidence of ownership, Estel et al. v. Midgard Inv. Co. et al. (Mo. App.), 46 S. W. (2d) 193; Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521; 11 Fletcher's Cycl. of Corporations (Per. Ed.), sec. 5092, and neither the *stock certificates* nor the *shares* could be the *source* of the dividend income. [Holmes' Federal Taxes (6 Ed.), pp. 396-398; In Appeal of Standard Marine Ins. Co., 4 Board of Tax Appeals, 853; In Appeal of Estate of McKinnon, 6 Board of Tax Appeals, 412; In Appeal of Codrington, 6 Board of Tax Appeals, 413.]

In Appeal of Standard Marine Ins. Co., *supra*, it was held that interest on Anglo-French loan bonds and British Government bonds, owned by a foreign corporation, but held within the United States, was not income from sources within the United States. In Appeal of Estate of McKinnon, *supra*, it was held that interest on foreign bonds paid to a nonresident alien individual while the bonds are held within the United States as security for a loan, did not constitute gross

income from sources within the United States. In Appeal of Codrington, *supra,* it was held that a nonresident alien receiving dividends upon shares of stock of the Canadian Pacific Railway Company, through an agent located in the United States, was not liable to income tax on such dividends.

Webster's New International Dictionary (2 Ed.) defines *source* as "that from which anything comes forth, regarded as its cause or origin; the first cause; the beginning; origin." Also, *source,* is defined as "the individual, company, or corporation initiating a payment, as of dividends, interest," etc. Holmes' Federal Taxes (6 Ed.), p. 396, on the subject of *source of income* says: "The word 'source' conveys only one idea—that of origin. It is defined in the Standard dictionary as follows: 'That from which any act, movement, or effect proceeds; a person or thing that originates, sets in motion, or is a primary agency in producing any course of action or result; an originator; creator; origin. A place where something is found or whence it is taken or derived.' This is its natural, ordinary, and familiar meaning, and it is particularly true that terms used in statutes describing objects of taxation should be construed according to their popular signification."

Able and diligent counsel cite no authority, and we find none, to support the proposition that the *source* of income here in question was in this State. In State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission, *supra,* it did not appear that the money that went to pay the interest on the bonds was derived from the real estate, in Wisconsin, securing the bonds.

Plaintiff cites Artophone Corp. v. Coale et al., 345 Mo. 344, 133 S. W. (2d) 343, and F. Burkhart Mfg. Co. v. Coale et al., 345 Mo. 1131, 139 S. W. (2d) 502. Like the present case, the purpose of each of these cases was to abate an income tax assessment against a domestic corporation, but both cases deal with the allocation of total net income derived from transactions in this State and other states, and do not answer the question here. "The *source* of . . . income is the *place* where it was *produced*" (*italics ours*), In re Kansas City Star Company, 346 Mo. 659, 142 S. W. (2d) 1029, l. c. 1037, and it cannot be said, with sound reason, that the income here concerned was *produced* in this State.

Also, it must not be overlooked that "taxing statutes should be construed strictly against the taxing authority unless a contrary legislative intent appears." [In re Kansas City Star Company, *supra,* 346 Mo. 659, 142 S. W. (2d) l. c. 1039; Artophone Corporation v. Coale et al., 345 Mo. 344, 133 S. W. (2d) 343, l. c. 347.]

If such income as here concerned should be taxed, then it is a subject for consideration by the Legislature. As we see it, such tax is not authorized by our present State income tax law. The judgment

should be reversed and cause remanded with direction to enter a judgment abating the additional assessment, and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.