**A. P. GREEN FIRE BRICK COMPANY, a Corporation, Petitioner (Respondent),**

**v.**

**MISSOURI STATE TAX COMMISSION Respondent (Appellant).**

No. 44232.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

John M. Dalton, Atty. Gen., James W. Faris, Asst. Atty. Gen., for appellant.

Henry C. Lowenhaupt, Owen T. Armstrong, St. Louis, for respondent. Lowenhaupt, Mattingly, Chasnoff & Stolar, St. Louis, of counsel.

VAN OSDOL, Commissioner.

This is a proceeding by petition for judicial review of a decision of the State Tax Commission sustaining assessments by the Director of Revenue of additional state income taxes for the calendar years of 1949 and 1950 against petitioner A. P. Green Fire Brick Company, a corporation with offices in Mexico, Missouri. The reviewing Circuit Court reversed, and Commission has appealed.

This court has appellate jurisdiction on the ground the case involves the construction of the revenue laws of this state. Const. art. V., § 3, V.A.M.S.

The case was submitted to the reviewing court on an agreed statement of facts, and the question involved is therefore one of law.

Facts were stipulated by the parties that A. P. Green Fire Brick Company (hereinafter referred to as "respondent") is a Missouri corporation engaged in manufacturing firebrick and other clay products. Included in respondent's income for the years 1949 and 1950 were amounts received from corporations or companies organized and operating in foreign countries —in the United Kingdom, in the Union of South Africa, in the Republic of Chile, and in the Republic of Mexico—pursuant to contracts between them and respondent. None of these foreign corporations or companies owned any assets or conducted any business in the United States. The amounts respondent received from these companies were paid pursuant to separate contracts between respondent and each of them. Each of the contracts provided for royalties to respondent as the consideration for the foreign company's use of certain of respondent's trade-marks, trade names and manufacturing processes in connection with the manufacture and sale of firebrick and other clay products in territories wholly without the United States. The amount of the royalty in each case was based upon a percentage of the sales of the foreign company. The place of payment was the foreign country, and the medium of payment was that country's currency.

The sole question here is whether the royalties paid respondent as stated during the years 1949 and 1950 were income from "sources in this state", within the contemplated meaning of that term as used in Section 143.040, RSMo 1949, V.A.M.S., and taxable as income under the Income Tax Act, Chapter 143, RSMo 1949, V.A.M.S.

"The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and 'the manifest purpose of the statute, considered historically,' is properly given consideration." Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, 925. The statute, Section 143.040, supra, is a taxing statute, and it is well settled that such a statute must be strictly construed in favor of the taxpayer and against the taxing authority. The fact that a particular subject of taxation is within the purview and intendment of the taxing statute must clearly appear. Union Electric Co. v. Morris, 359 Mo. 564, 222 S.W.2d 767; Petition of Union Electric Co. of Missouri, 349 Mo. 73, 161 S.W.2d

968, 143 A.L.R. 141; Union Electric Co. v. Coale, 347 Mo. 175, 146 S.W.2d 631; In re Kansas City Star Co., 346 Mo. 658, 142 S.W.2d 1029; Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W.2d 343.

Paragraph 1 of Section 143.040 provides that each year "at the times and in the manner, now or hereafter provided, a tax shall be levied upon, assessed against, collected from, and paid by every corporation, * * * authorized or existing under the laws of this state, and by every corporation, * * * licensed to do business in this state, or doing business in this state, and not organized, authorized, or existing under the laws of this state, * * in such per cent, as now or hereafter provided, of the net income *from all sources in this state* during the preceding year. Income shall include all gains, profits and revenue from the transactions of the business of the corporations in this state, including gains, profits and revenue from the doing in this state of such portions of each transaction of the business of the corporation which transaction is partly done in this state and partly done in another state or states, and all other income from sources in this state as income is otherwise defined. * * *" (Our italics.)

It should not be necessary in this opinion to reanalyze the changes and development of the Income Tax Act of Missouri since its inception in 1917, L.1917, p. 524, as such changes and development affect the issues of the instant case. These changes were effected through amendments by repeal and re-enactment in 1919, L.1919, p. 718 and again, and of special interest to us here, in 1927, L.1927, p. 475; and we make the further and parenthetical note that, in the original Act and in the 1919 and 1927 amendments, a term "sources within this state" was used, which term continued in use until a further amendment in 1929, L. 1929, p. 423. In the 1929 amendment, and thereafter in Section 11343, R.S. 1939; in the amendment of 1945, L.1945, p. 1882; and in Section 143.040, supra, the term "sources in this state" has been used. There is no difference of intent or meaning in the use of the one and the other of these two expressions.

It is important to notice that the original Act of 1917, Sec. 7, L.1917, p. 528, imposed a tax upon the income of domestic corporations from "all sources," that is, within and without the state; but the original Act imposed a tax only upon the income of foreign corporations from "all sources within this state".

The amending Act of 1927 declared in its title that one of its purposes was the elimination of "certain discriminations between residents and non-residents, and between individuals and corporations." The purpose and effect of the 1927 amendment, in so far as the amendment affected the determination of issues kindred to those of this case, were examined and exhaustively analyzed in Artophone Corporation v. Coale, supra, 345 Mo. at pages 352–357, 133 S.W.2d at pages 346–349; and the subject was again generally examined in the case of In re Kansas City Star Co., supra, 346 Mo. at pages 670–674, 142 S.W.2d at pages 1036–1038. In the Artophone case it was said [345 Mo. 344, 133 S.W.2d 346] the legislative intent of the statute as affected by the 1927 amendment was to avoid any discrimination between domestic and foreign corporations, and (1) to impose a tax upon the net income of every corporation " 'from all sources in this state' "; (2) to impose no tax on income of any corporation, domestic or foreign, from sources wholly without this state; and (3) to impose a tax on that portion of the net income of every corporation, domestic or foreign, which represents the portion done in Missouri of transactions of the corporation which are partly done in this state and partly done in another state or states.

(Paragraph 1 of Section 143.100, RSMo 1949, V.A.M.S., defines what shall be included in the term "income"; and Paragraph 2 of the Section provides that income shall include "interest, rent, dividends, * * *; and from any sources whatever; * * *." See also Section 10117, R.S.1929; and Section 11345, R.S.1939. It has been said these provisions constitute

a general definition of income, but do not make mention of "taxable" income as determinable upon the issue of its source, within or without the state. Artophone Corporation v. Coale, supra; Union Electric Co. v. Coale, supra.)

Attending now the question presented in our case—

■ Respondent herein was the owner of things of value—trade-marks, trade names and manufacturing processes. As owner of these things, respondent had interests in them which we may for the moment speak of as "property interests." The term "property" as used in the sense of things owned, includes intangible things such as trade-marks, trade names, and so forth; and by legal fiction, especially in cases involving property taxes, and the devolution and taxation of estates of decedents, the situs of intangible property is often considered as that of the domicile of the owner. Although income is an ownable thing, yet it is distinguishable from the intangible (or tangible) property yielding it. Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196. And while "property" is not necessarily synonymous with "capital," respondent's property (trade-marks, trade-names and manufacturing processes) was capital in that it was utilized as an income-producing asset, and was distinguishable from the income it produced. In a legal sense the property in the thing, spoken of as "a thing owned," is really the bundle of rights (and duties) incident to the ownership of the thing, including the right to control and use it. In the instant case, according to the agreed statement of facts, respondent had contracted the use of its trade-marks, trade names and manufacturing processes to foreign companies who utilized them (wholly outside of Missouri) in consideration of the royalties paid by these companies. Now, technically, the income in royalties paid respondent by the companies for the use of respondent's property might be said to have had its genesis in the property interests of respondent, a corporation with domicile in Missouri; but realistically, the "source" of the income was the place where the trade-marks, trade names and manufacturing processes were used and the income produced.

In the Kansas City Star Co. case, supra, 346 Mo. 658, 142 S.W.2d 1029, wherein the question was what portion of the income of the Star was allocable to Missouri, it was written that the source of income is the place where it is earned or produced—if by labor, the place where the labor was performed; if by capital, the place where the capital is employed. See also Artophone Corporation v. Coale, supra. In Burkhart Mfg. Co. v. Coale, 345 Mo. 1131, 139 S.W. 2d 502, a Missouri corporation owned factories in other states. Each factory was operated as an entirely separate business unit, the Missouri corporation retaining in its executive officers "directory" control only. The income from these factory units in other states was held to have been wholly derived from sources outside of Missouri (this, on the assumption no directory supervision and control by the Missouri corporation efficiently entered into the processes by which the income was earned [see again In re Kansas City Star Co. case, supra]). In Petition of Union Electric Co. of Missouri, supra, 349 Mo. 73, 161 S.W.2d 968 (and see Union Electric Co. v. Coale, supra, 347 Mo. 175, 146 S.W.2d 631), Union Electric, a Missouri corporation, owned shares of corporate stock in eight corporations and certificates of beneficial interest in an unincorporated joint stock company, all of which (but one, with which this court in that case was not concerned) operated entirely outside of Missouri. Union Electric also owned bonds issued by an Illinois corporation. The questions presented were whether the dividends and interest were income from "sources in this state" under Section 11343, supra, R.S.1939. The questions were ruled adversely to the taxing authority. This court employed what it termed a realistic approach to these questions. In the field of income taxation in particular it is important to penetrate beyond legal fictions and academic jurisprudence to the economic realities of a case. The actual use of the capital which

gave rise to the income in dividends and interest took place outside the state of Missouri. The conclusion was compelled that the source of the income was outside this state. It was again said the amended Act contemplated the locus of the "source" of income (as the term "source" was used in Section 11343, supra, R.S.1939, and we now again say, as used in Section 143.040, supra, RSMo 1949, V.A.M.S.) should be determined—in the case of income derived from the use of capital—by the place where the capital is employed.

The Circuit Court's judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM. The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.