STATE ex rel. RIVER CORPORATION, a corporation, Appellant,

v.

STATE TAX COMMISSION of the State of Missouri, Respondent.

No. 56629.

Supreme Court of Missouri, Division No. 2.

March 12, 1973.

Motion for Rehearing or Transfer to Court En Banc Denied April 9, 1973.

822

John H. Hendren, Kelly Pool, Hendren & Andrae, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., John E. Park, Asst. Atty. Gen., Jefferson City, for respondent.

HENRY I. EAGER, Special Commissioner.

This case began with the filing by Relator of two petitions for the abatement of additional income tax assessments for 1966 and 1967. It involves a construction of the Missouri Income Tax Law. The petitions were denied by the Director of Revenue. The State Tax Commission approved the assessments after an extensive hearing; on petition for review, the decision of the Tax Commission was affirmed. No procedural questions are raised and the case is here on appeal from the judgment of the circuit court. The petitions were consolidated for the hearings and we shall consider them as one here.

Relator operates a cement plant at Selma, Missouri. It is a Delaware corporation, having its principal office in St. Louis, Missouri. It succeeded, by merger, Stewart Concrete and Material Company, which filed the tax returns now in question. The Department of Revenue concedes that a refund of $918 was due for 1966, and for 1967, $4,486. Relator claims, respectively, $5,992 and $8,074. The sole question at issue is whether the net proceeds of sundry sales of cement from Relator's terminals outside of Missouri to purchasers outside of Missouri were taxable.

Relator's plant at Selma was located on the Mississippi River. It had a capacity of 3,000,000 barrels per year. It shipped cement, largely by barge, to storage silos at its outside terminals, namely, Memphis, Tennessee; Kansas City, Kansas; Monroe, Louisiana; Cincinnati, Ohio, and Natchez, Mississippi. Those terminals had substantial storage facilities, which were generally kept adequately filled. Some cement was also shipped to customers from storage facilities at St. Louis, Missouri. Each terminal was equipped to load cement on trucks or rail cars. They were also equipped to homogenize or blend various types of cement to suit the specific needs of customers, and did so when requested. Each terminal had a sales office adjoining or nearby; the office for the Kansas City, Kansas, terminal was in Kansas City, Missouri, and the one for Natchez in Monroe, Louisiana. Sales staffs were maintained at all of those offices. The Memphis office and the Cincinnati office each had a sales manager, a secretary and receptionist and four or five salesmen who worked out of that

respective office; five to nine employees worked at the Memphis terminal, and four to eight at the Cincinnati terminal. There were four to eight employees at the Natchez terminal and three to six at the Monroe sales office. Approximately 95 persons were employed at the Selma plant and about 30 in the St. Louis office. Relator listed a total capital asset investment of $33,903,128, of which $29,453,726 was invested in the Selma plant, with the remainder in the terminals, barge facilities and sales offices.

The terminals served customers in several neighboring states. Orders were received by telephone at the appropriate sales office; an order form was promptly prepared and transmitted to the adjacent terminal, a bill of lading was prepared, and the order filled from the terminal. Transportation was by truck or rail, as requested, usually by truck to a construction site. The terminal employees completed the bill of lading with all details, with copies to the customer and the carrier. A copy of the bill of lading and a copy of the order were sent to the St. Louis office where, in due course, invoices were prepared and the customer billed. Payments were made to the St. Louis office. Credits were approved in St. Louis, but usually in advance of all sales. The evidence was that Relator could not compete economically in Kentucky, Tennessee, Arkansas, Mississippi, Louisiana or Ohio if it did not have the terminals outside Missouri. As already stated, the issue here is whether the sales from the out-state terminals should be taxed as Missouri income. Relator has eliminated from its contentions the sales from the Kansas terminal because that sales office was in Missouri. The figures on sales from the other terminals and the resulting differences in the taxes are not in dispute.

The applicable provisions of § 143.040, RSMo 1959, V.A.M.S. (in effect in 1966–1967 but not changed in 1969 edition), levy an income tax upon every corporation licensed to do business in Missouri (with exceptions immaterial here) at such percentage as is "now or hereafter" provided, "of the net income from all sources in this state * * *. Income shall include all gains, profits and revenue from the transactions of the business of the corporations in this state, including gains, profits and revenue from the doing in this state of such portions of each transaction of the business of the corporation which transaction is partly done in this state and partly done in another state or states, and all other income from sources in this state as income is otherwise defined. * * *

"Where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portions of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states. The taxpayer may elect to compute the portion of income from all sources in this state in the following manner: The net income from all sources shall be determined as now or hereafter may be provided, * * * The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales * * * and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of tax, and the amount of tax shall be such per cent thereon as may now or hereafter be provided."

Pursuant to statutory authority the Department of Revenue promulgated the following regulation: "Income to be Reported: All income from any transaction whatever shall be reported in accordance with Section[s] 143.040 and 143.100(2) and (6), by each general business corporation.

"Where the elective allocation formula is used by a corporation taxable under Section 143.040 the following basis applies to the numerator of the allocation fraction:

1. All sales shipped from points in Missouri to points in Missouri. 100%

2. All sales shipped from points in Missouri to points outside of Missouri. 50%

3. All sales shipped from points outside of Missouri to points in Missouri. 50%"

Section 143.100, RSMo 1959, V.A.M.S., defines "income" (in so far as we are concerned here) as: "Income shall include gains, profits, and earnings derived from salaries, wages or compensation for personal services of whatever kind and in whatever form paid; and from professions, vocations, businesses, trade, commerce, or sales or dealings in property whether real or personal, growing out of the ownership or the use of any interest in real or personal property. * * *"

It is conceded that Relator duly made the election referred to in § 143.040 permitting it to make the computation set out therein. In its computations Relator has included all sales made in Missouri at 100%; it has included sales of material shipped from Missouri to points outside at 50%, and sales of material shipped into Missouri from other states at 50%. It has *excluded* all sales made from its terminals at Memphis, Cincinnati and Natchez to points outside Missouri as constituting sales wholly outside the State of Missouri. The State has assessed these at 50% for reasons hereinafter discussed.

Relator has paid income taxes in six outside states based upon the respective proportions of sales made in those states to its total sales. Its testimony was that if it is now taxed as the State proposes it will have paid total income taxes on 123.6% of its total 1966 sales, and 118.9% of its 1967 sales. Relator also had testimony that by its computations it allocated 58.8% of its total 1966 income to Missouri and 48.8% of its 1967 income. The State assessed an additional 19.9% for 1966 and 15.7% for 1967, solely by reason of the sales made from outside terminals to points outside Missouri.

Respondent has no controversy generally with the foregoing statement of facts; it only disagrees with Relator's statements of what it says are conclusions in interpreting the statutes, and the statement of the foregoing percentages as derived from an exhibit. These are not determinative here.

Basically, Relator says that the formula for the assessment of the taxes is based on *sales,* and that these sales were wholly outside the State of Missouri. Respondent says that it is based on *transactions,* of which the sales are only a part, and that material elements occurred in Missouri. The answer must be found in the statute and the Regulation. At the outset we note several principles of law which have some application.

■ There is no doubt that Missouri *could* (or can) constitutionally tax these "outside sales" on some basis if it specifically so provides, there being a Missouri "nexus" in the manufacture, the property in Missouri, the operations of the St. Louis office, etc. Maxwell v. Kent-Coffey Mfg. Co., 204 N.C. 365, 168 S.E. 397, aff. 291 U.S. 642, 54 S.Ct. 437, 78 L.Ed. 1040; United States Glue Co. v. Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135. In fact, Relator admits this proposition. The question here is: *has* the State done so?

■ Generally, taxing statutes are to be strictly construed in favor of the taxpayer unless a contrary legislative intent appears. F. Burkhart Mfg. Co. v. Coale, 345 Mo. 1131, 139 S.W.2d 502; In re Kansas City Star, 346 Mo. 658, 142 S.W.2d 1029. Respondent cites cases to the effect that *exemptions* in a taxing statute are not to be extended beyond the express language of the statute. Yazoo & Mississippi Valley RR Co. v. Thomas, 132 U.S. 174, 10 S.Ct.

68, 33 L.Ed. 302; Scholarship Endowment Foundation v. Nicholas (CA 10), 106 F.2d 552. We are not dealing with an exemption here, but solely with the language imposing the tax and its inclusive effect.

Regulations may be promulgated only to the extent of and within the delegated authority of the statute involved. If the Regulation involved here is in conflict with the sense and meaning of the statute, § 143.040, it is, to that extent, invalid.

The constitutionality of the statute is in no way involved here. We make this suggestion because, in certain phases of Respondent's argument, it seems to be supporting the constitutionality of the statute.

The sales contracts (on the individual orders) which are in question here were undoubtedly consummated outside of Missouri. The orders were received and accepted at the terminals, the goods were delivered to the carriers there and no title was retained. The last act or acts necessary to make the contracts effective were performed there. These were not Missouri contracts. Liebing v. Mutual Life Ins. Co. of New York, 276 Mo. 118, 207 S.W. 230; Nemeth v. Becker Roofing Co., Mo.App., 151 S.W.2d 559. It is stated in 17 Am. Jur.2d Contracts, § 10, p. 346: "A contract is made at the time the last act necessary to its formation is done. It is usually completed at the place where the offer is accepted." This is the general law. Relator has also cited cases indicating that this principle is recognized in the several states in which its terminals are located.

Originally Missouri taxed all the income of domestic corporations, but only taxed foreign corporations upon the income from sources within Missouri. Union Electric Co. v. Coale, 347 Mo. 175, 146 S.W.2d 631. This was discriminatory, and the situation was corrected by the 1927 amendment of § 13106, RSMo 1919, Laws 1927, p. 476. The history of the legislation shows that Missouri did not thereafter intend to tax such income of corporations, domestic or foreign, as had its source outside the State of Missouri. The record indicates that the Revenue Department accepted Relator's allocation of income excluding the sales from its terminals outside of Missouri until it made the present assessments for 1966 and 1967.

We come now to an analysis of the taxing statute, § 143.040 and the appropriate regulation. The tax is initially laid (Sec. 1) upon the revenue from the transactions of business in this state, including that from the doing in this state of such portion of each transaction as is partly done in this state and partly done in another state, and upon all other income from sources in this state. (We need not consider provisions for deduction of expenses, etc.) Section 2 concerns income resulting from a "transaction partially in this state and partially in another state"; it provides that where such income cannot be segregated an allocation is provided, and the taxpayer may elect to use the formula set forth, so as to allocate the portions of the "transaction in this state" and the other state. The formula permits the taxpayer to add to the *"amount of sales,"* which are transactions wholly in this state, one-half of the amount of *sales* which are transactions partly within this state and partly outside, and to divide the total by the total sales, "and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income" to be used for the Missouri tax. A proviso is included to the effect that in cases where the *sales* do not express the volume of business, a similar formula based on "the amount of business transacted" may be used. There is no contention here that the sales do not express the volume of business.

As indicated, the State insists that the tax was levied upon the proportionate part of *transactions* done partly in Missouri and partly outside, that the place of *sale* itself does not, per se, fix the source of the income, and that the sale is only a part of the overall "transaction," being merely the

final "capture" of the income. In this connection counsel point out the investment of the majority of the capital in Missouri, the manufacture of the cement in Missouri, employment of substantial labor in Missouri, and the activities of the principal office in St. Louis, as integral parts of the transaction resulting in the sale and the production of income. Relator says, on the other hand, that the legislature has provided in the elective formula that the *"amount of sales"* which are "transactions" wholly in the state or partly in and partly out, shall be the determinative factor; in other words, that although "transactions" are referred to generally in various places, when it comes right down to the taxing formula, it is solely based upon and related to *sales*.

The situation is further complicated by the Regulation of the Revenue Department which provides that under the elective allocation formula the basis applied to the numerator of the allocation fraction should be: "1. All *sales* from Missouri to Missouri. 100%; 2. All *sales* from Missouri to points outside. 50%; 3. All *sales* from points outside to Missouri. 50%." (Italics ours.) It makes no reference to sales *from* points outside Missouri *to* points outside Missouri. Counsel for Respondent argued orally that "2" might be *stretched* to cover these sales, because the cement was originally "shipped" from the plant in Missouri to the outside terminals. We do not agree. The Regulation clearly refers to shipments for sale, and none of this cement was sold until orders were received at the terminals. The Regulation clearly excludes these sales and if it is consistent with the statute, the present sales cannot be taxed. However, the statute is controlling and we come back to the construction of it.

While no case is cited which is precisely in point, some should be noted by way of analogy. In Relator's cases the facts are different; in Respondent's cases the facts are different and the controlling taxing statutes are different. Relator cites, principally, on the merits of our question: F. Burkhart Mfg. Co. v. Coale, 345 Mo. 1131, 139 S.W.2d 502; Union Electric Co. v. Coale, 347 Mo. 175, 146 S.W.2d 631; In re Kansas City Star, Banc, 346 Mo. 658, 142 S.W.2d 1029; A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544, and Hans Rees' Sons, Inc. v. North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879. Respondent cites, likewise: Petition of Union Electric Co. of Missouri, 349 Mo. 73, 161 S.W.2d 968; Maxwell v. Kent-Coffey Mfg. Co., 204 N. C. 365, 168 S.E. 397, 90 A.L.R. 476, aff. 291 U.S. 642, 54 S.Ct. 437, 78 L.Ed. 1040; Montgomery Ward & Co. v. State Tax Commission et al., 151 Kan. 159, 98 P.2d 143, and United States Glue Co. v. Oak Creek, 161 Wis. 211, 153 N.W. 241, same case 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 499, and Artophone Corporation v. Coale, Mo., 133 S.W.2d 343. It will be impossible to discuss these cases in detail here. In Burkhart a similar issue was decided in favor of the taxpayer but the Missouri corporation had factories, managers and salesmen in three states outside of Missouri, goods were manufactured there and sold from there, and payments received there; and the only connection between Missouri and the outside manufacture and sales was the element of a general control by the principal office. The Court noted that if the legislature had intended to tax all sales, including those outside Missouri, it should have said so, and that it evidently intended that there could be untaxed sales outside Missouri. The chief difference between that case and ours was the existence of the outstate factories. In Union Electric v. Coale, the Court noted the elimination of the discrimination against domestic corporations (taxation of all income) and held that the corporation was not subject to taxation on dividends received in Missouri from stock held in out-state corporations, holding also that the *source* of the income must be in Missouri, and that the "source" is where the income is produced. The case of In re Kansas City Star held that the corporation was entitled to allocate a por-

tion of its income to outside states where it maintained branch offices, editorial staffs and sundry employees, distribution routes, and advertising solicitors, although the papers were printed in Missouri and the principal offices were maintained there. The essential holding was that where income arises from sources wholly outside of Missouri, it is not taxable, and the allocation of the income for tax purposes was approved. The Court noted the "far-flung" activities outside of Missouri, and held that a portion of the income did not result solely from the plant and activities in Missouri. In A. P. Green, supra, the Court held that royalty payments to a Missouri corporation for the use of its processes and patents in plants outside of Missouri were not subject to the Missouri income tax because that income had its source in the places where the processes, etc., were used and the income produced; also that mere supervision from Missouri did not alter the situation. In Hans Rees' Sons, Inc. v. North Carolina, a New York corporation had its only plant in North Carolina for the tanning and processing of leathers; it had a warehouse and sales office in New York and from 40% to 50% of its products were shipped to New York and sold there. The corporation attacked an assessment which allocated 85% of its income to North Carolina. The Court held that this assessment was arbitrary and unreasonable, based as it was upon property values inside and outside of North Carolina. Since that statute was entirely different, the case is of little value to us.

We look now at Respondent's cases. In Petition of Union Electric Co. of Missouri, 349 Mo. 73, Banc, 161 S.W.2d 968, the Court merely reaffirmed the decision in Union Electric Co. v. Coale, supra, that dividend and interest payments to Union Electric Company from out-state utility companies were not taxable income in Missouri; this, for the reason that the *source* of the income was in the place where the labor and capital needed to produce the money was employed. Respondent cites the case as holding that many things go to

the creation of income, including labor and capital; this may have been true, in a general sense, but the decision is of little value to Respondent, for we are concerned here with the wording of our statute with reference to "transactions" and "sales," a question in no way considered there. And the Court again reaffirmed the doctrine of "strict construction" against the taxing authority. In Maxwell v. Kent-Coffey Mfg. Co., 204 N.C. 365, 168 S.E. 397, affirmed 291 U.S. 642, 54 S.Ct. 437, 78 L.Ed. 1040, the taxing statute based the tax due upon the proportion of the real estate and tangible personal property in North Carolina as compared to all of such property everywhere, a statute in no way comparable to ours. The State allocated 99% of the income to North Carolina; 99.8% of the sales was outside the state. The issue was the constitutionality of the statute, and it was held to be constitutional. The Court noted that the capital and the organization which produced the sales were to be considered, and not merely the place or places of the sales. We say, again, that we must look to the precise wording of our statute, and except for statements of general principles the case is of no applicability. In Montgomery Ward & Co. v. State Tax Commission et al., 151 Kan. 159, 98 P.2d 143, the statute taxed income derived from property located and business transacted within the state. The state sought to tax all the income from sales in the Kansas stores. The Court held that a portion of that income must be allocated to outside states in which the far-flung activities of administration, purchasing, warehousing, advertising, etc. took place. The Court thus held that under *that* statute the place of sales did not necessarily determine the source of all the income, and that the income was derived from the whole chain of activities. In United States Glue Company v. Oak Creek, 161 Wis. 211, 153 N.W. 241, the taxing statute provided for a tax upon that proportion of the income of a corporation as was derived from business transacted and property located within the state. The taxpayer had its plant in Wisconsin

and branches in several outside cities, with stocks of goods, managers, and salesmen located there. Sales were made from all locations. The Court apparently held that *all* income was taxable because the corporation's headquarters and principal plant were in Wisconsin, and the business was controlled from there; also, that Wisconsin was the source out of which all the income arose, and that the place of sale did not change the situation. On review, at 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, the Court merely held, essentially, that the statute was not unconstitutional as a burden on interstate commerce. The case stands so far as we are concerned, for mere statements of general principles and we seriously doubt the correctness of the result, even under that statute. In any event, it has no material bearing upon a construction of our statute. The facts in Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W.2d 343, are essentially different from ours. There the only place of business of a Missouri corporation was located in Missouri, all orders were approved there, the goods were shipped from there to customers within and without the state, and the only outside activity was the solicitation of orders by salesmen traveling outside but operating from the Missouri office. The State contended that the source of all income was in Missouri but the Court held that the income from the sales initially negotiated outside of Missouri should be allocated. Apparently this was for the reason that the sales in question were "transactions" partly within and partly without Missouri. There no sale was completed outside of Missouri. The negotiations became part of the overall picture or transaction. While the Court thus took a rather broad view of "transactions," generally, it was not called upon to decide whether a sale completed outside of Missouri was taxable.

By and large, Respondent's cases hold: that a "transaction" may be a broader thing than a "sale," and may include the manufacture of a product and the employment of labor and capital therefor; that a

state *may* so legislate as to tax "transactions" occurring partly in the home state and partly elsewhere, making a reasonable allocation; that under *other statutes,* the place of sale is not necessarily conclusive; and that a taxing statute should be strictly construed against the taxing authority.

Relator's counsel deny that a "transaction" under our statute includes the activities of a seller occurring before the immediate sales negotiations; they say that, as indicated by Regulation MR210, it should include only the *sale* itself, and the dealings between the seller and the buyer, because the Regulation concerns only *sales* (within or partly within Missouri).

Relator's cases hold essentially: that a mere general control exercised from an office or plant in Missouri is not sufficient to create a taxable status; that sales from factories located outside of Missouri to purchasers outside Missouri negotiated by employees outside Missouri, are not taxable; that the *source* of the income must be in Missouri, and generally the source is where the income is produced; and that taxing statutes are to be strictly construed.

We have no authority which is decisive here. Regulation MR210 relates only to "sales." If it controls, the tax here asserted is invalid, for we have held that these sales were consummated outside of Missouri, and it makes no provision for taxing such sales. The Regulation may be viewed as an interpretation that the statute lays no tax on sales wholly outside of Missouri; but, since a regulation may not override the statute, we revert to the statute itself. The overriding issue is: does the statute tax "transactions" or "sales"? We note here that on this record the sales made by Relator do sufficiently "express the volume" of its business, § 143.040, supra, for no other source of income is shown or considered. In Section 1 of the statute references are made to "transactions," principally to the doing in Missouri of such part of each transaction as is performed partly in Missouri and partly elsewhere. In Section 2 reference is made again to transactions

partly in Missouri and partly elsewhere, with a provision that if the income cannot be segregated then allocation shall be made. Had the statute ended here, our decision might be simpler. But at this point the taxpayer is given the right to elect a method of computation for the allocation (which Relator has elected) which, although complicated, is based upon *sales*. It is as follows: " * * * The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales * * *." We can only ascertain the intent of the statute from the words contained in it. It seems to have said that for the purpose of allocating the tax a *sale is a transaction,* and that *sales* are the determining factor in actually computing the tax. It has not referred to sales which are *parts* of transactions. The legislature has thus adopted a very limited definition (or scope) of the word "transaction." In other words, after certain general provisions, and when one comes down to fixing the allocation, the method provided is based on *sales* wholly within the state and *sales* partly within the state and partly outside. This is the actual operating formula provided. It makes no reference to sales wholly outside Missouri and the Revenue Department has seemingly recognized this in excluding all reference to any such sales in its Regulation. Also, the express references in the statute would, under the rule of "the expression of one excludes the other" exclude sales wholly outside of Missouri. Other methods of computation could easily have been adopted, but they were not; for instance, the proportionate values of property in and out of Missouri; the investment of capital in and out of Missouri; perhaps even the payrolls in and out of Missouri; or the use of the word "transactions" omitting all reference to sales. No such tests were used. A "sale" in its ordinary interpretation does not include the manufacture of goods. It is a contract between the buyer and a seller by which the title to property and its possession are transferred. Black's Law Dictionary Revised Fourth Ed., p. 1503. The original shipment of cement by Relator to its own terminals was not a sale.

We deem it unnecessary to engage in a prolonged discussion of "income," or the "sources" of income. We decide the case on the basis of the *formula* which the legislature has fixed. If the intent was otherwise, the statute may be amended.

The judgment is reversed and the Court is directed to enter a judgment setting aside the order and decision of the State Tax Commission and directing that the controverted assessments be abated.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.