CLINTON SHIRT CORPORATION,
Appellant,

v.

KENTUCKY BOARD OF TAX APPEALS
and Commonwealth of Kentucky, Department of Revenue, Appellees.

Court of Appeals of Kentucky.

Nov. 3, 1978.

Rudy Yessin, Frankfort, for appellant.

William S. Riley, Asst. Atty. Gen., Thomas A. Duke, Atty., Legal Staff Dept. of Revenue, Frankfort, for appellee, Dept. of Revenue.

Before, COOPER, HAYES and WILHOIT, JJ.

HAYES, Judge.

This appeal is from a judgment of the Franklin Circuit Court which affirmed the order of the Kentucky Board of Tax Appeals, which in turn affirmed a ruling of the Kentucky Department of Revenue, assessing the appellant additional corporation income taxes in the amount of $25,617.44 and corporation license tax in the amount of $1,291.02 for the fiscal years ending September 30, 1967 through September 30, 1970.

The Kentucky Department of Revenue had determined that Clinton was doing business solely in Kentucky and therefore KRS 141.010(14)(a) was applied to Clinton's taxable net income.

Clinton contends that its business activity was partly in Kentucky and partly in New York, and therefore, KRS 141.120(2) should have been applied by the Department of Revenue.

The Board of Tax Appeals found the following facts from the evidentiary hearing before it:

Clinton Shirt Corporation ("Clinton") is a manufacturing company with a plant located in Clinton, Kentucky, engaged principally in the manufacturing of girls' clothes. Clinton was incorporated in New York in 1961 and all of its stock is owned by its parent, Garan, Inc. ("Garan"). Garan started out as a manufacturing company and, as its business expanded and new facilities were opened, each facility was incorporated as a separate corporation with Garan, as the parent corporation, owning all the stock of each subsidiary corporation. During the period in question, Garan owned all the stock of 18 such subsidiary corporations. Garan's officers are also the officers of Clinton and all the other subsidiaries.

Offices are maintained in the Empire State Building in New York City for the officers and management of Garan, who are also the officers of the subsidiaries. Clinton's name appears on the building directory, however, the lease for the office space is held by Garan and Garan pays the rent to the landlord. Besides the officers of Garan, there are in New York designers, production personnel, sales personnel and office personnel who design and sell and are concerned with the products manufactured by Garan and its subsidiaries. All of the employees in the New York office, including corporate officers, are paid with checks drawn upon Garan. Employee benefits for New York employees are established in Garan's name; taxes are withheld and social security contributions are reported for these employees in Garan's name.

Sales of the products of Garan and its subsidiaries are made by salesmen in the New York Office. Salesmen who sell Clinton products also sell the products of other subsidiaries within the same manufacturing "division" and are not limited to selling products manufactured only by Clinton. All salesmen are paid with checks from Garan. All of the cash resulting from sales of the products of Garan and its subsidiaries is deposited in one bank account; credit checks of new customers are conducted by the New York credit department which conducts credit checks for all the subsidiary corporations.

With the exception of some samples of [sic] New York, the bulk of Clinton's inventory is located in Kentucky. Clinton's products are shipped directly from the plant in Clinton, Kentucky to the customer. Also, goods purchased by Clinton are shipped directly to Clinton at Clinton Kentucky.

Through entries on company ledgers, Garan charges Clinton and its other subsidiaries for an allocated portion of the office rent and salaries of the officers and other New York office personnel who are paid by Garan. Also, sales are credited to each of the subsidiaries through a ledger entry.

Based upon the foregoing, we conclude that the New York office is maintained and controlled by Garan, Inc. and not by Clinton Shirt Corporation. Clinton is merely charged, by means of a ledger entry, with an allocated portion of the costs of maintaining its office. Furthermore, the appellant did not offer proof that Clinton had activities other than those activities which it contends were carried on in New York. Thus, since the New York office was not being maintained and controlled by Clinton, and no proof was offered that Clinton was doing business in any state other than New York and Kentucky, we conclude that Clinton Shirt Corporation was doing business solely in Kentucky.

The Board then concluded that taxable net income in the case of Clinton Shirt Corporation is defined by the provision of KRS 141.010(14)(a) because Clinton owns or leases no property outside Kentucky; has no payroll outside Kentucky; and, the New York office is not maintained and controlled by Clinton. The Board applied the rule in *Luckett v. Heaven Hill Distilleries, Inc.*, Ky., 336 S.W.2d 584 (1960). The Board reasoned that since KRS 141.010(14)(a) applied therefore there could be no allocation and apportionment under KRS 141.120.

An appeal from a Board of Tax Appeals ruling to the circuit court is governed by KRS 131.370(3), which states:

(3) No new or additional evidence may be introduced in the circuit court except as to the fraud or misconduct of some person engaged in the administration of the revenue laws and affecting the order, ruling or award, but the court shall otherwise hear the cause upon the record as certified by the board and shall dispose of the cause in summary manner, its review being limited to determining whether or not:

(a) The board acted without or in excess of its powers;

(b) The order, decision, or award was procured by fraud;

(c) The order, decision, or award is not in conformity to the law; and

(d) If findings of fact are in issue, whether such findings of fact support the order, decision or award.

Obviously, (a) and (b) do not apply here, and, after reviewing the transcript of evidence, we are of the opinion that (d) does not apply, in as much as the finding of facts by the Board is supported by substantial evidence. *Trimble County Board of Supervisors v. Mullikin*, Ky., 438 S.W.2d 524 (1968).

There remains the question of whether the decision of the Board is in conformity to the law.

■ The trial court found, and we agree, that the Board correctly applied the *Luckett, supra,* case. In that case it was determined that to avoid allocation of out-of-state sales to Kentucky, the taxpayer must not only negotiate the sales outside Kentucky, but must in addition thereto, negotiate them from offices, agencies and places of business maintained and controlled by the taxpayers outside of the state.

Based upon the transcript of evidence, the conclusion is obvious that the parent corporation, Garan, Inc., maintained and controlled the office, or place of business, in New York and Clinton had no control in any manner.

■ We are left with appellant's contention that KRS 141.120(2) and (3) apply because it was determined that Clinton paid a yearly franchise tax to the State of New York for the privilege of doing business. That tax, under Article 9A, New York Corporation Franchise Tax Law, is levied merely because Clinton is incorporated in New York State.

KRS 141.120(2) states, "[a]ny corporation having income from business activity which is taxable both within and without this state shall allocate and apportion its net income as provided in this section."

KRS 141.120(3) states that a corporation is taxable in another state if, in that state, it is subject to a franchise tax for the privilege of doing business.

It is difficult to compare and rationalize KRS 141.010(14)(a) with KRS 141.120(2)

and (3); however, it is apparent that if there is no business income from activity outside the state of Kentucky as found under KRS 141.010(14)(a) then KRS 141.120(2) and (3) would have no effect for there would be nothing to allocate and apportion under the scheme as outlined in KRS 141.120, even though, as in the present case, the corporation in question may come within the provisions of KRS 141.120(3) by merely paying a franchise tax to another state just because the corporation is incorporated in that other state. So, even if Clinton were permitted to allocate under KRS 141.120, since there is no business income derived by it in the State of New York, Kentucky would still receive 100% of Clinton's state corporation income tax obligation. The result to Clinton is the same as if only KRS 141.010(14)(a) is applied. It is noted that the percentage of business allocation in New York State listed on Clinton's corporation income tax return filed in New York, and made a part of the record in the present case, is zero.

Obviously, the Kentucky legislature recognized the apparent conflict that could arise from the application of KRS 141.010(14)(a) and KRS 141.120(2) and (3) for in 1976 that body deleted the provisions of KRS 141.120(2) and (3).

In conclusion, we note the "loaned servant doctrine," which appellant argues in his brief, was not presented to the Board or the trial court; however, the Board did determine this issue against the appellant and their finding was supported by sufficient evidence.

The judgment is affirmed.

COOPER, J., concurs.

WILHOIT, J., dissents.

WILHOIT, Judge, dissenting.

I respectfully dissent from the majority opinion which I believe is contrary to the clear and unambiguous legislative intent embodied in KRS 141.120 as it was written when this dispute arose. Section 2 of that statute provided for the allocation and apportionment of net income by a corporation having "income from business activity which is taxable both within and without this state." Section 3 then stated unequivocally that "a corporation is taxable in another state if, in that state it is subject to . . . a franchise tax measured by net income [or] a franchise tax for the privilege of doing business." The evidence in this case indicates that in 1967 and 1970 Clinton Shirt Corporation was subject to a franchise tax by the State of New York. Cinton thus falls squarely within these statutory provisions entitling it to assert the allocation provisions of KRS 141.120. It may well be that such allocation will result in no change in its tax but that is yet to be determined.

*Luckett v. Heaven Hills Distilleries, Inc.,* Ky., 336 S.W.2d 584 (1960), has no application to this case. In *Luckett,* the Court was concerned with whether the taxpayer carried on its business activity entirely within this state, not whether that activity was taxable by another state, a different proposition altogether. Similarly, KRS 141.010(14)(a) has no application since that section deals with "corporations having income taxable only in this state" and Clinton is manifestly not such a corporation.